UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEN AKOUNDI on behalf of himself, and all others similarly situated, | Civil Case No.: 14-cv-0366-RWS |
| Plaintiff(s), | CIVIL ACTION |
| -against- | **ELECTRONICALLY FILED** |
| FMS, INC., and JOHN DOES 1-25, | |
| Defendant(s). | |

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF
THE FEDERAL RULES OF CIVIL PROCEDURE

Law Offices of Joseph K. Jones, LLC
555 Fifth Avenue, Suite 1700
New York, NY 10017
(646) 459-7971 telephone
(646) 459-7973 facsimile

*Attorneys for Plaintiff*

On the Memorandum:

Joseph K. Jones, Esq. (JJ-5509)
Benjamin J. Wolf, Esq. (BW-3338)

# **TABLE OF CONTENTS**

Page

Table of Authorities..................................................................................................ii, iii

**PRELIMINARY STATEMENT AND STATEMENT OF FACTS**........................................1

**ARGUMENT**.................................................................................................................4

    I.       Legal Standard For A Motion To Dismiss Pursuant To Rule 12(B)(6)
            Of The Federal Rules Of Civil Procedure..........................................................4

    II.      FMS' Letters Are False, Deceptive And Misleading As They Fail To
            Offer a 25% Settlement Amount........................................................................6

    III.     Citibank Does Not Authorize the 25% Settlement Offer...................................9

    IV.     25% Settlement Offer Overshadows the FMS' Validation Notice....................10

**CONCLUSION**..............................................................................................................11

# TABLE OF AUTHORITIES

Page

**Cases**

Ashcroft v Iqbal, 556 U.S. 662 (2009)..................................................................................9

Clomon v Jackson, 988 F. 2d 1314 (2nd Cir. 1993)..............................................................5

Foti v NCO Financial Systems, Inc., 424 F.Supp. 643 (S.D.N.Y 2006).............................5

Fritz v Resurgent Capital Services, LP., 955 F. Supp. 2d 163 (EDNY 2013).................6-7

Graziano v Harrison, 950 F.2d 107 (3rd Cir. 1991).........................................................5,10

Harrison v NBD Inc, 968 F. Supp. 837 (E.D.N.Y. 1997)....................................................5

Kassel v Universal Fidelity, L.P., 2014 WL 824335  (E.D.N.Y 2014)...............................7

Klein v Solomon & Solomon, 2011 WL 5354250 (D. Conn. 2011)....................................7

Marinoff v City College of New York, 63 Fed. Appx. 530 (2nd Cir. 2003)........................4

McAnaney v Astoria Financial Corp, 357 F. Supp. 2d 578 (E.D.N.Y 2005).....................5

N.C. Freed Co. v. Bd. of Governors, 473 F.2d 1210 (2d Cir.)
    *cert. denied*, 414 U.S. 827 (1973)....................................................................................5

Okyere v Palisades Collection, 916 F. Supp 2d 508 (SDNY 2013)..................................6,8

Pollack v Crandall, 196 F. Supp. 253 (S.D.N.Y. 1961).......................................................4

Russell v Equifax A.R.S., 74 F.3d 30 (2nd Cir. 1996)......................................................5,10

Sims v Artuz, 230 F. 3d 14 (2nd Cir. 2000)..........................................................................4

Soffer v Nationwide Recovery Sys, Inc., 2007 WL 1175073 (E.D.N.Y. 2007)................11

Sussman v I.C. Sys., Inc., 928 F. Supp. 2d 784 (S.D.N.Y. 2013).....................................6,8

Talyansky v Syracuse Language Systems, 199 F.3d 1323 (2nd Cir. 1999)........................5

Utility Metal Research, Inc., 179 Fed. Appx. 795 (2nd Cir. 2006).....................................4

Walsh v Law Offices of Howard Lee Schiff, P.C., 2012 WL 437 2251 (D. Conn. 2012)...7

Warren v Sessoms & Rogers, P.A., 676 F. 3d 365 (4th Cir. 2012).....................................6

Wilson v Quadramed Corp., 225 F.3d 350 (3rd Cir. 2000)..........................................................5

**Statutes**

15 U.S.C. 1692.............................................................................................................*passim*

15 U.S.C. 1692e................................................................................................................6-7

15 U.S.C. 1692e(2)(A).........................................................................................................1

15 U.S.C. 1692e(10).............................................................................................................1

15 U.S.C. 1692e(11).............................................................................................................6

15 U.S.C. 1692g...............................................................................................................1,10

15 U.S.C. 1692f....................................................................................................................1

Rule 12(b)(6).........................................................................................................................4

**Other**

http://web.mta.info/nyct/fare/FaresatAGlance.htm...................................................................7

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
Civil Case Number: 14-cv-0366-RWS

---------------------------------------------------------------------------------

KEN AKOUNDI, on behalf of
himself, and all others similarly situated,
Plaintiff(s),

-against-

FMS, INC.,
and JOHN DOES 1-25,

Defendant(s).
---------------------------------------------------------------------------------

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

# PRELIMINARY STATEMENT AND STATEMENT OF FACTS

In two one-page collection letters dated August 12, 2013 and September 25, 2013, Defendant, FMS, INC. ("FMS"), a debt collector, wrote to Plaintiff, KEN AKOUNDI ("Plaintiff"), in an attempt to collect a debt purportedly owed to Citbank, N.A. Said letters were each written on FMS's letterhead.

On January 21, 2014, Plaintiff filed a class action Complaint (**Exhibit A**[1]) against FMS seeking damages as well as declaratory and injunctive relief arising from FMS' violation of 15 U.S.C. §1692 *et seq.,* the Fair Debt Collection Practices Act (FDCPA), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices. More specifically, Plaintiff alleges that FMS violated Sections 1692e(2)(A), 1692e(10); 1692g and 1692(f) of the FDCPA.

---

[1] The subject letters are annexed to Plaintiff's Complaint. *See* **Exhibit A**.

Basic mathematics, that the least sophisticated consumer should be expected to use to determine whether FMS properly stated the amount of the debt in its collection letters, works and is accurate everywhere, except at FMS. Despite FMS' attempts to frame the argument as one that is about a "*de minimus*" amount, an amount that is not "material" or one where "...Plaintiff is complaining about the settlement offers he received", the simple and undisputed truth is that the numbers do not lie. See Defendant's Memorandum of Law ("Defendant's MOL"), pp. 1, 6-7. Accordingly, FMS' letters are false, deceptive and misleading, and therefore, violate numerous sections of the FDCPA.

As will be further shown, FMS' letters state that Plaintiff's "Total Balance Due is $6,846.24". Defendant's letters also include, in large, bolded print, in a specially designated bubble at the top of the letters: **"25% SETTLEMENT OFFER"** and a statement in much smaller font and in a ruled box on the right hand side of the letter, "Settlement Amount $1,711.57". Alternatively, and crucially, the bubble in FMS' letters **does not include** any of the following quotation substitutes:

* "25.0001460655776% SETTLEMENT OFFER",
* "$1,711.57 SETTLEMENT OFFER", or,
* "$1,711.56 SETTLEMENT OFFER."

Accordingly, FMS' letters are false, deceptive or misleading because:

a) 25% x $6,856.24 = $1,711.56 **and not** $1,711.57;

b) 1/4 of $6,856.24 = $1,711.56 **and not** $1,711.57; and

c) $1,711.57 ÷ $6,856.24 = 25.0001460655776% **and not** 25%.

In this particular case, Mr. Akoundi is left to guess whether $1,711.56, which is 25% of the balance of "The Balance Due" will suffice to settle his debt with FMS **or** whether he must pay

the greater amount of $1,711.57, which is an amount greater than 25% of "The Balance Due" as stated in the collection letter. This begs the question that if this deception in stating the amount by FMS is being done to Plaintiff here, how many other members of the class (and most likely for higher debt amounts) are being sent alleged settlement letters where **FMS receives more**[2] than the "25% Settlement Offer"?

FMS attempts to put the cart before the proverbial horse on this issue. FMS states "Simply put, $1,711.57 is 25% of $6,846.24." *See* Defendant's MOL, p. 2. First, this is mathematically incorrect and it is just not true.  The math is very simple in this case, 25% of $6,846.24 is $1,711.56 **not** $1,711.57, as much as FMS would like this Court to believe that 25% of $6,846.24 is $1,77.57 and not $1,711.56.  However, its argument fails because its theorem cannot survive the simplest proof test:  $1,711.57 ÷ $6,846.34 = 25.0001460655776% is **not**  25%. Notably, FMS' math generates extra revenue in its own favor.

Second, it is undisputed that all of FMS' letters contain the "25% SETTLEMENT OFFER" bubble and each contain the respective class members'  "Total Balance Due". Thus, the "settlement amount" in FMS' letters is the unknown amount before FMS (via presumably its computer software[3]) performs the calculation. The math formula can be written as Total Balance Due x Settlement Percentage = Settlement Amount or ($6,846.24 x 25%) = Settlement Amount. Thus, in Mr. Akoundi's case, all that was known by FMS' software was that his Total Balance Due is $6,846.24 and that he was offered a 25% settlement. If FMS' letter was not deceptive, and

---

[2] In this case, it is undisputed the FMS' error regarding stating Plaintiff's proposed settlement amount results in extra money in FMS' favor (i.e. $1,711.57 instead of $1,711.56). However, Plaintiff's analysis would not change (regarding FMS' failure to properly state the amount of the debt) if the extra money was in Plaintiff's favor as FMS letters would still be false, deceptive or misleading.

[3] Upon information and belief, FMS does not have individual employees performing the necessary calculations themselves on each individual account but that it is done in bulk by FMS software prior to the debt collection letters being sent out.

FMS's software actually used 25%, it would have resulted in an amount of $1,711.56 **and not $1,711.57**. Accordingly, FMS' argument that "$1,711.57 is 25% of $6,846.24" (s*ee* Defendant's MOL, p. 2.) is fatally flawed because FMS can only arrive at an amount of $1,711.57 if FMS programmed its software to use a settlement percentage of 25.0001460655776%[4] instead of the 25% as stated in its letter.

Similarly, FMS' letters are deceptive because they indicate that the creditor, Citibank, was involved in offering the 25% settlement amount. This is clearly not possible given that the settlement amount, in FMS' favor, was actually greater than 25% as more fully set forth above. In addition, it is within FMS' authority to negotiate the settlement amount, if any, between itself and Plaintiff. Citibank is not involved, at all, in these negotiations.

## ARGUMENT

### I. Legal Standard For A Motion To Dismiss Pursuant To Rule 12(b)(6) Of The Federal Rules Of Civil Procedure

A motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action, but rather tests the legal sufficiency of the complaint. *See* Pollack v Crandall, 196 F. Supp. 253, 254 (S.D.N.Y. 1961); Sims v Artuz, 230 F. 3d 14, 20 (2nd Cir. 2000). The question is not whether Plaintiff will prevail at trial, but whether he/she should be given an opportunity to offer evidence in support of their claims. *See* Utility Metal Research, Inc., 179 Fed. Appx. 795, 797 (2nd Cir. 2006); Marinoff v City College of New York, 63 Fed. Appx. 530, 531 (2nd Cir. 2003). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a Court must take all allegations in the complaint as true, viewed in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the

---

[4] Upon information and belief, Plaintiff submits that should this case reach the discovery phase, FMS will produce discovery and/or produce a witness at a deposition that will reveal that it actually uses a number greater than 25% in its "25% Settlement Amount" letters for its own strategic business purposes.

4

complaint, the plaintiff may be entitled to relief. *See* Talyansky v Syracuse Language Systems, 199 F.3d 1323 (2nd Cir. 1999); McAnaney v Astoria Financial Corp, 357 F. Supp. 2d 578, 582 (E.D.N.Y 2005).

Congress enacted the FDCPA in 1977 after noting the abundant evidence of the use of abusive, deceptive and unfair debt collection practices by many debt collectors. The FDCPA aims to eliminate abusive practices by debt collectors and provide debtors with a private cause of action against debt collectors who fail to comply with the Act. *See* 15 U.S.C. 1692 *et seq.* Russell v Equifax A.R.S., 74 F.3d 30, 34 (2nd Cir. 1996). Because the FDCPA is a remedial statute, the Second Circuit construes its language broadly, so as to effect its purpose. *See* Harrison v NBD Inc, 968 F. Supp. 837, 844 (E.D.N.Y. 1997) *citing* N.C. Freed Co. v. Bd. of Governors, 473 F.2d 1210, 1214 (2d Cir.), *cert. denied,* 414 U.S. 827 (1973). In order to give effect to the FDCPA's intent to protect the gullible as well as the shrewd, courts have generally analyzed a debt collector's statements from the perspective of the least sophisticated consumer. *See* Clomon v Jackson, 988 F. 2d 1314, 1318 (2nd Cir. 1993). A debt collection letter is deceptive when it can reasonably be read to have two or more different meanings, one of which is inaccurate. *See* Foti v NCO Financial Systems, Inc., 424 F.Supp. 643, 660 (S.D.N.Y 2006) *citing* Wilson v Quadramed Corp., 225 F.3d 350, 354 (3rd Cir. 2000). A validation notice must not be overshadowed or contradicted by accompanying messages from debt collectors. *See* Russell, 74 F. 3d at 34 *citing* Graziano v Harrison, 950 F.2d 107, 111 (3rd Cir. 1991). A validation notice is overshadowing or contradictory if it would make the least sophisticated debtor uncertain as to her rights. *See* Wilson, 225 F.3d at 354.

5

## II. FMS' Letters Are False, Deceptive And Misleading As They Fail To Offer a 25% Settlement Amount

FMS first strategically attempts to diminish the claims made by Plaintiff in this case by stating that it is only about "1 penny". *See* Defendant's MOL, p. 5.  That argument, itself, is proof positive that FMS' letters are false, deceptive and misleading as this "1 penny" shows that FMS did not offer a 25% Settlement Amount but an amount, not surprisingly, **greater in FMS' financial favor**.

Next, FMS argues that its own incorrect calculations determining the settlement amount in its debt collection letters are "bizarre and idiosyncratic". *See* Defendant's MOL, p. 6. Although in Mr. Akoundi's case the difference between 25% of his "Total Balance Due" and what FMS falsely stated in its debt collection letters is $.01 (*see* Defendant's MOL, p. 5.), a member of the class whose "Total Balance Due" is greater than Mr. Akoundi's would be faced with a difference greater[5] than $0.1   This presents a classic slippery slope argument that FMS simply cannot overcome: Is $0.01 not enough? What about $.02? What about $1.00?

This then leads to FMS' futile attempt to classify Plaintiff's argument as not material and "*de minimus*" because FMS argues it was only a $0.01 difference in FMS' favor. *See* Okyere v Palisades Collection, 916 F. Supp 2d 508 (SDNY 2013); Warren v Sessoms & Rogers, P.A., 676 F. 3d 365 (4th Cir. 2012)[6]; Sussman v I.C. Sys., Inc., 928 F. Supp. 2d 784 (S.D.N.Y. 2013); Fritz

---

[5] For example, if FMS sent a debt collection letter to another consumer who received the "25% Settlement Offer" and had a "Total Balance Due" that was double Mr. Akoundi's, the difference in FMS' favor would be almost $.02. The calculation is as follows:

* 25% of $13,692 (i.e. 6,846.24 x 2) = $3,423.12
* 25.0001460655776% of $13,692 = $3,423.13999

[6] "Warren's allegations, however, do not involve a *false representation,* or any affirmative representation for that matter. Rather, as described above, Warren complains about conduct that involves a "failure to disclose" "that the communication," the February 2009 phone message, was "from a debt collector." The statute expressly prohibits this exact *omission* by requiring debt collectors to disclose their status in every communication with a consumer. Accordingly, whether a materiality requirement attaches to other violations of § 1692e has no impact on Warren's allegations that the defendants violated § 1692e(11)." Id. at pp. 374. While a debt collector's failure to identify that it

6

v Resurgent Capital Services, LP., 955 F. Supp. 2d 163 (EDNY 2013)[7]; Walsh v Law Offices of Howard Lee Schiff, P.C., 2012 WL 437 2251 (D. Conn. 2012)[8]; Kassel v Universal Fidelity, L.P., 2014 WL 824335, *2 (E.D.N.Y 2014)[9]; Klein v Solomon & Solomon, 2011 WL 5354250 (D. Conn. 2011).[10] *See* Defendant's MOL, pp. 6-7.  Similarly, if Plaintiff's counsel plans to take the New York City Subway to a Court appearance on this case, and Plaintiff's counsel decides to pay $0.01 less (i.e. $2.49 instead of $2.50[11]) than the Subway fare, Plaintiff's counsel will not be permitted through the designated gates to take the Subway.  Clearly, even $0.01 is material, and not *de minimus*.  In addition, in Mr. Akoundi's case, the amount was $0.01; however, arguably other members of the class may be subject to a higher amount in FMS' favor. *Infra*, FN 5.

---

was a "debt collector" in a telephone call may not be a material misrepresentation, the same cannot be said, here, for a clear error by FMS in the calculation of a debt.

[7] In Fritz, the Court actually determined that the issue in that case **was material** and therefore violated the FDCPA. Id. at p. 171.

[8] "Moreover, the fact that Walsh was compelled to retain counsel to defend against the debt does not transform defendants' procedural misconduct into material misrepresentations within the ambit of section 1692e. Even if Walsh was forced to incur unnecessary attorneys' fees and other costs to respond to defendants' frivolous motions or meritless objections, state court procedures provide the appropriate recourse for such bad faith conduct: sanctions in the form of attorneys' fees." Id at *5. The issue of materiality regarding the cost for being "compelled to retain counsel" in Walsh versus FMS' failure to properly state the amount of the debt is easily distinguishable.

[9] "Applying the "least sophisticated consumer" standard here, the Court finds that Plaintiff fails to state a claim under 15 U.S.C. § 1692e. As noted above, Plaintiff finds the Collection Letter's reference to her as a "valued customer" of the creditor deceptive because "Plaintiff had one solitary transaction with the creditor and in no way can be perceived as a 'valued customer.' Even if it is true that Plaintiff only engaged in one transaction with the creditor, the Court fails to see how the term "valued customer" violates § 1692e, as it is simply a comment regarding the creditor's perception of Plaintiff." Id.  Again, the fact that a debt collector's letter does/does not state "valued customer" is drastically different than FMS' "25% Settlement Offer" letters that do not, in fact, make a 25% settlement offer but an amount greater, and in FMS' financial favor.

[10] "In this instance, the allegations of the complaint describe procedural defects in connection with state court litigation. However, the complaint does not contain any allegations of false representations that could be construed as material so as to mislead plaintiff in his repayment of or challenge to the debt. Plaintiff argues that defendants' failure to name the Citibank, N.A. as the proper plaintiff caused him harm because he was forced to defend against an improper party. However, plaintiff does not allege that defendants made a representation or statement that *impeded his ability to pay* or challenge the debt that he had incurred." (emphasis added). Here, based on FMS' misrepresentation of the 25% settlement amount, Mr. Akoundi is left to guess whether $1,711.57 **or** $1,711.56 would settle his debt with FMS.

[11]*See* http://web.mta.info/nyct/fare/FaresatAGlance.htm

The problem for Defendant in all of the above cases it cites is that each case presents the issue, of what is material or not, in the grey. Here, the calculation error in FMS' favor in its collection letters is in black and white.

For example, in Okyere, 916 F. Supp 2d at 519-520, this Court wrote: "Here, there is nothing in the complaint to plausibly suggest that the failure to fulfill the state law notice-of-substitution requirement had any material effect on Okyere's ability to challenge the debt or the process used to collect it. Okyere had the ability to participate in the state court process regardless of the failure to file the notice and, in any event, was obviously aware that the Houslanger Defendants were involved in the case because they filed materials with the Court starting on May 4, 2011."   Since the calculations do not lie, FMS simply cannot escape the fact that its letters are false and deceptive in its own financial favor. Clearly, the fact that Mr. Akoundi's debt is indisputably **not 25% of the settlement amount**, would "materially affect" his "...ability to challenge the debt..." since he is forced to guess how much he should pay to settle the account with FMS. Id. at p. 520.

In other cases cited by FMS, it is still unable to overcome the fact that its letters are false and deceptive. See Sussman v I.C. Sys., Inc., 928 F. Supp. 2d at pp. 795-796. In Sussman this Court also wrote  "Plaintiff alleges that Defendant 'hung up either prior to or as soon as' Plaintiff, a member of his household, or his voicemail answered the call. It is therefore not plausible that Defendant made *any* 'false representations,' let alone material misrepresentations, regarding the 'character, amount, or legal status of the debt' or in an effort to collect the debt." (internal citations omitted); Id. at pp. 795-796. Sussman is easily distinguishable to the facts here where FMS' letters did not accurately state a 25% settlement amount.

8

FMS could have substituted other language in the bubble in its collection letters other than **"25% Settlement Offer"** that may have made it compliant with the FDCPA by not being false or deceptive. For example:

* "25.0001460655776% SETTLEMENT OFFER",
* "$1,711.57 SETTLEMENT OFFER", or,
* "$1,711.56 SETTLEMENT OFFER."

FMS' letter does not accurately state the alleged 25% settlement offer of Mr. Akoundi's "total balance" due. As a result, he is left to guess whether submitting $1,711.56 (25%) or $1,711.57 (25.0001460655776%) with the payment coupon attached to FMS' letter would eliminate his debt. If he only included a $1,711.56 payment, would he still have an outstanding balance to FMS for $.01 and would the offer of settlement then become void? FMS' motion to dismiss must be denied as it cannot overcome this threshold issue. Furthermore, Plaintiff has certainly stated a claim to relief which is plausible on its face.

### III.  Citibank Does Not Authorize the 25% Settlement Offer

FMS' failure to properly state the amount of the debt, which was a material misrepresentation (*supra* **Section II**), by itself, shows that Plaintiff properly stated a claim that Citibank did not authorize a 25% Settlement offer. As previously stated, the FMS settlement offer is actually greater for FMS than 25%. Was FMS authorized by Citibank to offer a settlement amount greater than 25%? For example, a 25.0001460655776% settlement amount as offered to Mr. Akoundi here?

FMS relies exclusively on Ashcroft v Iqbal, 556 U.S. 662, 677-680 (2009) for the premise that Plaintiff has not pled sufficient facts that Citibank did not authorize the 25% settlement offer. *See* Defendant's MOL, pp. 7-8. However, FMS seems to view each paragraph of

9

Plaintiff's Complaint in a vacuum as opposed to analyzing the Complaint in its entirety. Plaintiff's claim that Citibank did not authorize the 25% settlement is not merely based on that paragraph alone but also Plaintiff's allegations that FMS' letters do not make a 25% settlement offer but an amount greater, in FMS' financial favor. *supra* **Section II**.

FMS' debt collection letters misled Plaintiff into thinking that Citibank was somehow involved in the negotiations with FMS to consent to a 25% settlement offer. The letters indicate that FMS contacted Citibank (or vice versa) and that all of a sudden Citibank decided to offer Plaintiff a 75% reduction in his debt if paid by a certain date. Plaintiff submits that Citibank is never involved in the decision to offer Plaintiff a 25% settlement amount.

### IV.    25% Settlement Offer Overshadows the FMS' Validation Notice

"When a notice contains language that "overshadows or contradicts" other language informing a consumer of her rights, it violates the Act". *See* Russell, 74 F.3d at 34 *citing* Graziano, 950 F.2d at 111 ("'the juxtaposition of two inconsistent statements' renders the notice invalid under § 1692g.").

Here, the August 12, 2013 letter provides both the 1692(g) 30-day validation notice but also a statement that FMS' purported 25% settlement offer is only good through September 26, 2013. Accordingly, the least sophisticated consumer would be confused about whether by pursuing their rights under the validation notice they could still take advantage of the settlement offer. Clearly, the settlement offer was not only good through September 26, 2013 as the September 25, 2013 letter shows that FMS intended to extend the time for the settlement offer to a date beyond September 26, 2013. *See* **Exhibit A**. In this case, FMS actually extended the offer to November 9, 2013.

This case is unlike those cited by FMS since Plaintiff has already established that the "settlement offer" was not 25% but a percentage greater, and in FMS' favor. *See* Defendant's MOL, pp. 9-10; e.g. Soffer v Nationwide Recovery Sys, Inc., 2007 WL 1175073 (E.D.N.Y. 2007). Even if Plaintiff chose to validate the debt, it would have been overshadowed by the incorrect 25% settlement offer.

## CONCLUSION

The Plaintiff respectfully requests that this Court deny in its entirety Defendant's motion to dismiss the Complaint, which properly asserts claims against Defendant for violations of the Fair Debt Collection Practices Act.

Dated: April 7, 2014

                              Respectfully submitted,

                              */s/ Joseph K. Jones*
                              Joseph K. Jones, Esq. (JJ-5509)
                              Law Offices of Joseph K. Jones, LLC
                              555 5th Avenue, Suite 1700
                              New York, New York
                              (646) 459-7971 telephone
                              (646) 459-7973 facsimile
                              jkj@legaljones.com

                              */s/ Benjamin J. Wolf*
                              Benjamin J. Wolf, Esq. (BW-3338)
                              bwolf@legaljones.com
                              Law Offices of Joseph K. Jones, LLC
                              555 5th Avenue, Suite 1700
                              New York, New York
                              (646) 459-7971 telephone
                              (646) 459-7973 facsimile

                              *Attorneys for Plaintiffs*