UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

KEN AKOUNDI on behalf of himself, and
all others similarly situated,

               Plaintiff,

     - against -

FMS, INC. and JOHN DOES 1-25,

              Defendants.

------------------------------------X

14 Civ. 366 (RWS)

OPINION

A P P E A R A N C E S:


    Attorneys for the Plaintiff

    LAW OFFICES OF JOSEPH K. JONES, LLC
    555 Fifth Avenue, Suite 1700
    New York, NY 10017
    By:  Joseph K. Jones, Esq.
         Benjamin J. Wolf, Esq.


    Attorneys for the Defendants

    SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
    3 Cross Creek Drive
    Flemington, NJ 08822-4938
    By:  Aaron R. Easley, Esq.

**Sweet, D.J.**

Defendant FMS, Inc. ("Defendant" or "FMS") has moved to dismiss the complaint of Plaintiff Ken Akoundi ("Plaintiff" or "Akoundi"). Based on the conclusions set forth below, Defendant's motion to dismiss is granted and the complaint is dimissed.

## Prior Proceedings

On January 21, 2014, Akoundi filed his complaint alleging violations of the Fair Debt Collection Practices Act (the "FDCPA"). On March 11, 2014, FMS moved to dismiss Akoundi's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rules 6.1 and 7.1. The motion was marked fully submitted on May 21, 2014.

## Facts

The allegations of the complaint are assumed to be true and are summarized herein only to the extent necessary to dispose of Defendant's motion to dismiss.

Sometime prior to August 12, 2013, Akoundi allegedly

incurred a financial obligation (the "obligation") to Citibank, N.A. ("Citi") and the obligation became past due. (Compl. ¶¶ 17-18.) At some time prior to August 12, 2013, Citi, either directly or through intermediate transactions, assigned, placed, transferred or sold the obligation to FMS. (Compl. ¶ 20.) FMS collects debts incurred or alleged to have been incurred for personal, family or household purposes on behalf of creditors. (Compl. ¶ 15.) At the time the obligation was assigned, placed, transferred or sold to FMS, the obligation was past due. (Compl. ¶ 21.)

On or about August 12, 2013, FMS sent Plaintiff a letter in an attempt to collect the obligation (the "August Letter"). (Compl. ¶ 22.) The letter stated that FMS had "been authorized by Citibank N.A. to offer [Akoundi] a 25% settlement to pay [his] outstanding balance, as shown." (Compl. ¶ 33.) The letter also stated that the offer of a twenty-five percent settlement was good through September 26, 2014. (Compl. ¶ 34.) The total balance of the obligation was listed as $6,846.24, while the settlement amount was listed as $1,711.57. (Compl. ¶¶ 38-39.)

The August Letter also contained a "30 day notice," which stated: "UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS

2

AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF
THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS
DEBT IS VALID.  IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30
DAYS FROM RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF
THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL OBTAIN
VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL
YOU A COPY OF SUCH JUDGMENT OR VERIFICATION.  IF YOU REQUEST
THIS OFFICE IN WRITING 30 DAYS AFTER RECEIVING THIS NOTICE, THIS
OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE
ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR."
(Compl. Ex. A.)


On or about September 25, 2013, FMS sent Plaintiff a
second letter in an attempt to collect the obligation (the
"September Letter").  (Compl. ¶ 23.)  The letter contained the
same language that FMS had "been authorized by Citibank N.A. to
offer [Akoundi] a 25% settlement to pay [his] outstanding
balance, as shown."  (Compl. ¶ 43.)  As before, the total
balance of the obligation was listed as $6,846.24 while the
settlement amount was listed as $1,711.57.  (Compl. ¶¶ 46-47.)
The letter also stated that the offer of a twenty-five percent
settlement was good through November 9, 2014.  (Compl. Ex. B.)


A perfect twenty-five percent of $6,846.24 is

3

$1,711.56.   (Compl. ¶ 49.)   Neither letter stated a reason for
the $0.01 difference between the listed settlement amount of
$1,711.57 and a perfect twenty-five percent of the total
balance, or $1,711.56.   (Compl. ¶¶ 41 & 50.)

        Plaintiff alleges that Citi did not authorize the
settlement and perhaps was never even involved in offering a
twenty-five percent settlement in either letter and that FMS'
statements in both letters were materially false, deceptive and
misleading in that they falsely suggested that Citi was still
involved in the collection process of the obligation – thereby
falsely representing the character and legal status of the debt
– and that the twenty-five percent settlement offer settled the
outstanding balance with Citi.   (Compl. ¶¶ 35, 44, 52-55.)   He
further alleges that the settlement letters were materially
false, deceptive and misleading because FMS added an amount to
the Citi obligation – the $0.01 – that it was not entitled to
receive.   (Compl. ¶¶ 56-57.)

        Additionally, Plaintiff alleges that the statements in
the August Letter were materially false, deceptive and
misleading in that the twenty-five percent settlement offer that
is only available until September 26, 2013 is overshadowed or
contradicted by the 30-day notice.   (Compl. ¶ 58.)

                              4

Akoundi alleges that the letters caused him - and "the least sophisticated consumer" - uncertainty and forced him to guess how much money he owed, how much money would accrue daily on his debt, how much additional money he would owe if he paid the amount demanded in the letter, if/when FMS collection efforts would actually stop if he remitted the entire payment demanded, and whether Citi actually authorized the twenty-five percent settlement. (Compl. ¶¶ 59-62.) He alleges that FMS intended to cause consumers confusion about the exact amount of money owed and to cause them to believe that they would benefit financially by immediately sending payment for the amount demanded regarding the "settlement amount" rather than waiting to make such payment. (Compl. ¶¶ 63-66.)

**The Applicable Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007) (internal quotation marks omitted).  A complaint must
contain "sufficient factual matter, accepted as true, to 'state
a claim to relief that is plausible on its face.'"  Ashcroft v.
Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at
570).

   A claim is facially plausible when "the plaintiff
pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged."  Iqbal, 556 U.S. at 663 (quoting Twombly,
550 U.S. at 556).  In other words, the factual allegations must
"possess enough heft to show that the pleader is entitled to
relief."  Twombly, 550 U.S. at 557 (internal quotation marks
omitted).

   Additionally, while "a plaintiff may plead facts
alleged upon information and belief 'where the belief is based
on factual information that makes the inference of culpability
plausible,' such allegations must be 'accompanied by a statement
of the facts upon which the belief is founded.'"  Munoz-Nagel v.
Guess, Inc., No. 12-1312, 2013 WL 1809772, *3 (S.D.N.Y. Apr. 30,
2013) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120
(2d Cir. 2010)) and Prince v. Madison Square Garden, 427 F.
Supp. 2d 372, 384 (S.D.N.Y. 2006); see also Williams v.

Calderoni, No. 11-3020, 2012 WL 691832, *7 (S.D.N.Y. Mar. 1,
2012).  The pleadings, however, "must contain something more
than . . . a statement of facts that merely creates a suspicion
[of] a legally cognizable right of action."  Twombly, 550 U.S.
at 555 (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE
AND PROCEDURE § 1216 (3d ed. 2004)).

**Discussion**

**The Complaint Does Not State Claim Under Section 1692e**

The purpose of the FDCPA is to eliminate abusive debt
collection practices and establish "certain rights for consumers
whose debts are placed in the hands of professional debt
collectors for collection."  Kropelnicki v. Siegel, 290 F.3d
118, 127 (2d Cir. 2002) (quoting DeSantis v. Computer Credit,
Inc., 269 F.3d 159, 161 (2d Cir. 2001)).  In particular, Section
1692e "prohibits the use of 'false, deceptive, or misleading
representation . . . in connection with the collection of any
debt.'"  Okyere v. Palisades Collection, LLC, 961 F. Supp. 2d
508, 514 (2d Cir. 2013) (citing to 15 U.S.C. § 1692e).

The Second Circuit has adopted a "least-sophisticated
consumer standard" for determining whether a letter is false and

misleading.  Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir.
1993).  The standard is an objective analysis that "seeks to
protect 'the naïve' from abusive practices" while simultaneously
shielding debt collectors from liability for "bizarre or
idiosyncratic interpretations" of debt collection letters.
Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d
Cir. 2005); see also Kropelnicki, 290 F.3d at 127; Maguire v.
Citicorp Retail Servs., Inc., 147 F.3d 232, 236 (2d Cir. 1998);
Romea v. Heiberger & Assocs., 163 F.3d 111, 118 (2d Cir. 1998).
The Second Circuit has clearly stated that the "least
sophisticated consumer does not need to have even the
sophistication of the average, everyday, common consumer, but is
neither irrational nor a dolt."  Ellis v. Solomon & Solomon,
P.C., 591 F.3d 130, 135 (2d Cir. 2010).  Lack of sophistication
is not to be conflated with unreasonableness.  Id.; see also
Greco, 412 F.3d at 363 (explaining that courts have "carefully
preserved the concept of reasonableness" when applying the
least-sophisticated consumer standard).


        Furthermore, courts have generally held that to
"satisfy the FDCPA, the alleged act must as a minimum involve a
misrepresentation that is 'material.'"  Okyere, 961 F. Supp. 2d
at 518-519; see also Gabriele v. Am. Home Mortg. Servicing,
Inc., 503 Fed. Appx. 89, 94 (2d Cir. 2012)("Although Congress

did not expressly require that any violation of § 1692e be material, courts have generally held that violations grounded in 'false representations' must rest on material misrepresentations."); Sussman v. I.C. Sys., Inc. 928 F. Supp. 2d 784, 795 (S.D.N.Y. 2013); Fritz v. Resurgent Capital Servs., LP, 955 F. Supp. 2d 163, 170 (E.D.N.Y. 2013); Walsh v. Law Offices of Howard Lee Schiff, P.C., No. 11-1111, 2012 WL 4372251, *3-5 (D. Conn. Sept. 24, 2012). To be "material," courts in this circuit have concluded that the offending act must "influence a consumer's decision or ability to pay or challenge a debt." Kassel v. Universal Fidelity, LP, No. 13-3756, 2014 WL 824335, *2 (E.D.N.Y. Mar. 2, 2014); Klein v. Solomon & Solomon, P.C., No. 10-1800, 2011 WL 5354250, *2 (D. Conn. Oct. 28, 2011).[1]

Plaintiff contends that FMS' August and September Letters were false, deceptive and misleading because they stated that the settlement offer was a "25% Settlement Offer" but

---

[1] These same courts have frowned on finding a violation of the FDCPA for immaterial statements, even if technically false, if the ability to dispute the error furthers no conceivable consumer interest or does not contribute to the objectives of the FDCPA. See Walsh, 2012 WL 4372251, at *4 ("Imposing liability for technical falsehoods that have no bearing on the debt or the ability to dispute it furthers no conceivable consumer interest under the FDCPA and only increases the cost of credit by subjecting debt collectors to frivolous claims."); see also Hasbrouck v. Arrow Financial Servs., LLC, No. 09-748, 2011 WL 1899250, *4 (N.D.N.Y. May 19, 2011) ("An immaterial statement or information does not contribute to the objective of the FDCPA nor does it undermine it.").

listed a settlement amount which incorporated a penny more than a perfect twenty-five percent of the total obligation amount; in essence, the rounded percentage was meant to partially mask, Plaintiff implies, an addition of an amount that FMS was not entitled to receive.  (Compl. ¶¶ 41, 49, 50, 56-57.)  Plaintiff suggests that this figure was generated via an algorithm, employed by FMS to calculate settlement amounts slightly higher than that which have been authorized.  (Pl.'s Opp'n 3.) Plaintiff, however, relies solely on the fact that the stated percentage figure was rounded (i.e., "25%" versus "25.0001460655776%") to support his theory that the settlement letter reveals a fraudulent scheme.  Without some other additional facts supporting the theory that the rounded figure is intentionally deceptive, Plaintiff's interpretation of FMS' settlement letters presents as idiosyncratic and implausible and cannot be found to meet the pleading requirements of 12(b)(6).

No authority has been presented for the Plaintiff's proposition that the simple use of a rounded figure should be considered a material misrepresentation in and of itself.[2]  The

---

[2] Plaintiff notes, presumably in support of a materiality argument, that if FMS does use an algorithm to add on extra amounts to settlements, the 'extras' would grow in proportion to the underlying debt amount.  (Pl.'s Opp'n note 5.)  This assertion, however, like the more fundamental assertion that the algorithm does, in fact, exist at all, is totally unsupported. Plaintiff's cursory attempt to distinguish legal precedent cited by Defendant on the basis that the cases presented "grey" issues, while "the calculator error in FMS' favor in its collection letters is in black and white," fails

10

settlement amount is clearly stated on the face of each letter, making clear the amount owed by the consumer.  Even if the rounding of a percentage were considered a technical falsity, there is no evidence that the fact that the percentage figure had been rounded would influence the least sophisticated consumer's decision to pay or to challenge the debt, especially in the absence of any corroborating questionable acts on the part of FMS in connection with the settlement of their debt to rouse their suspicions.[3]  See Sussman, 928 F. Supp. 2d at 795; Fritz, 955 F. Supp. 2d at 170.  Because Plaintiff's complaint and subsequent submissions do not plead sufficient facts to support a case for materiality, this contention fails.

### Plaintiff's Allegation That Citi Did Not Authorize the Settlement Is Factually Insufficient

---

for the same reason.  (Pl.'s Opp'n 7-8.)

Furthermore, Plaintiff's discussion on the propriety of rounding and repeated argument that "numbers do not lie" is inapposite.  (Pl.'s Opp'n 2-3, 6; Pl.'s Sur Reply 2.)  Whether or not the rounding is proper or a technical falsehood, Plaintiff presents no compelling argument as to why the use of a rounded figure in this context should reasonably be thought of as a material misrepresentation.  See supra note 1.

[3] It is implausible that a reasonable consumer would read the plainly listed settlement amount and, without an egregious disparity to prompt them, then calculate the amount and be so perplexed by the difference of a penny from their own calculation that they would assume that a conspiracy to defraud them and others similarly situated was afoot, rather than assume the figure had, for instance, been rounded for the sake of simplicity.  Perhaps the least sophisticated consumer would wonder why the settlement amount represented an imperfect percentage of the overall obligation, but it beggars belief that they would feel "forced to guess" whether Citi was actually involved in the settlement and whether submitting the stated settlement amount would eliminate the debt on the basis of a self-identified one-cent 'discrepancy' alone.  (See Compl. ¶¶ 59-62; Pl.'s Opp'n 2-3.)

Akoundi asserts that the August and September Letters caused uncertainty as to whether Citi actually authorized the twenty-five percent settlement. (Compl. ¶¶ 59-63; Pl.'s Opp'n 9.) More specifically, it appears from Plaintiff's complaint and later papers, though the arguments are not clearly stated, that Plaintiff contends that either (1) Citibank only authorized a settlement of a perfect twenty-five percent, so any deviation would be improper and therefore fraud or (2) Citibank never authorized any sort of reduction in the debt in order to settle the account, in which case the attempt to settle without Citi's permission would be a deception. (Pl.'s Opp'n 9-10.)

Plaintiff again bases his theories exclusively on the fact that the settlement amount is not what he believes it should be – i.e., that it is one cent more than a perfect twenty-five percent of his overall outstanding debt – and does not plead any other facts to corroborate his theory.[4] At best, Plaintiff only promises that at the discovery phase "FMS will produce discovery and/or produce a witness at a deposition that will reveal that it actually uses a number greater than 25% in

---

[4] Plaintiff's criticism that FMS relies on Iqbal to evaluate the factual sufficiency of Plaintiff's pleadings is puzzling. Plaintiff's complaint is correctly evaluated according to the plausibility standard articulated by Iqbal and Twombly, and found lacking.

its '25% Settlement Amount' letters for its own strategic business purposes." (Pl.'s Opp'n note 4.)  While it is understood that plaintiffs will not always have the full set of relevant facts in their possession at the time a lawsuit commences, a vague promise to establish facts later on in litigation to support recovery is insufficient to survive a motion to dismiss.  See generally Twombly, 550 U.S at 561.  In the absence of other facts, Plaintiff's bare assertions that FMS' settlement offer was unauthorized are at best creative, but wholly unsupported.

**The Complaint Does Not State Claim Under Section 1692g**

Under § 1692g(a), a debt collector must, within five days of the initial communication with a consumer, provide the consumer written notice advising him of his right to dispute the debt within 30 days, otherwise known as a 30-day debt validation notice. 15 U.S.C. § 1692g(a); see also Castro v. Green Tree Servicing LLC, No. 10-7211, 2013 WL 4105196, at *5 (S.D.N.Y. Aug. 14, 2013).  Under 1692g(b), "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt . . . ."  15 U.S.C. § 1692g(b).  A debt collector may not "confuse and discourage the consumer from

13

exercising his statutory right to dispute the validity of the debt within thirty days." Wiener v. Bloomfield, 901 F. Supp. 771, 775 (S.D.N.Y. 1995).

The use of conflicting deadlines is not itself a violation of the FDCPA. Wiener, 901 F. Supp. at 775; see also Weber v. Computer Credit, Inc, 259 F.R.D. 33, 39 (E.D.N.Y. 2009) ("[o]nly if the demand for payment obscures the right to dispute the debt within 30 days is an issue of 'overshadowing' raised") (quoting Day v. Allied Interstate, Inc., No. 09-0495, 2009 WL 1139474, *2 (E.D.N.Y. Apr. 27, 2009) (citations omitted)). Accordingly, courts have confirmed there is nothing inherently confusing or overshadowing about including a settlement offer in the debt validation notice. Soffer v. Nationwide Recovery Sys., Inc., No. 06-435, 2007 WL 1175073, *4 (E.D.N.Y. Apr. 19, 2007) ("[n]o less than three courts in this Circuit . . . [have held], as a matter of law, that a settlement offer contained in a debt collector's initial communication with a debtor does not overshadow or contradict a validation notice contained in that same communication"). In order to survive a motion to dismiss, a plaintiff alleging a violation of § 1692g must (1) demonstrate a "contradiction between the demand language and the validation language" and (2) establish that the contradiction could "mislead the least sophisticated consumer into disregarding his

14

or her rights under the validation notice." Harrison v. NBD Inc., 968 F. Supp. 837, 846 (E.D.N.Y. 1997) (quoting Beeman v. Lacy, Katzen, Ryen, & Mittleman, 892 F. Supp. 405, 412 (N.D.N.Y. 1995)).

Plaintiff appears to argue both that the twenty-five percent settlement offer contained in the August Letter is overshadowed or contradicted by the 30-day notice, and, conversely, that the 30-day notice is overshadowed by the settlement language, in each case causing the least sophisticated consumer confusion as to whether by disputing the debt pursuant to the 30-day notice they could no longer take advantage of the twenty-five percent settlement offer. (Compl. ¶¶ 58 & 72; Pl.'s Opp'n 10-11.)

However, the purpose of the overshadowing provision is to protect consumers from confusing communications that operate to discourage the consumer from "exercising his statutory right to dispute the validity of the debt within thirty days," not the ability to accept a settlement. Wiener, 901 F. Supp. at 775; see generally Sarno v. Midland Credit Mgmt., Inc., No. 10-4704, 2011 WL 349974, *4 (S.D.N.Y. Jan. 31, 2011); Harrison v. NBD Inc., 968 F. Supp. 837, 848 (E.D.N.Y. 1997)("If a debtor chooses to reject the discount offer, at worst, she or he would be

15

liable for the original amount of the debt."). Courts have found that including a settlement offer in the same initial communication as a 30-day notice, as was the case here, does not overshadow or contradict a validation notice.[5] Soffer, 2007 WL 1175073 at *4; see also Weber, 259 F.R.D. at 39. Plaintiff neither points to a contradiction between the settlement language and validation language, nor establishes how the least sophisticated consumer would be misled into disregarding his or her rights to validate or dispute the debt. As such, Plaintiff fails to allege any basis for a claim under § 1692g and his overshadowing claims must fail as a matter of law.

---

[5] It is worth noting that the August Letter extended the settlement offer deadline fifteen days beyond the 30-day validation period. Even if the settlement offer had expired during the validation period, however, it likely would still not be considered to have an overshadowing effect. See Omogbeme v. Risk Mgmt. Alternatives, Inc., No. 01-7293, 2003 WL 21909773, *3 (E.D.N.Y. Aug. 4, 2003) (finding that "the fact that the discount offer expires before the thirty day validation period does not provide evidence of overshadowing").

## Conclusion

Based upon the facts and conclusions of law set forth above, Defendant's motion to dismiss is granted and the complaint is dismissed with leave granted to amend within 20 days.

It is so ordered.

Dated:    New York, New York
          July 16, 2014

_____
                              Robert W. Sweet
                              U.S.D.J.

17